A03A0893. ATLANTIC COAST MECHANICAL v. R. W. ALLEN
BEERS CONSTRUCTION et al.
(592 SE2d 115)

PHIPPS, Judge.

Atlantic Coast Mechanical (ACM) worked as a subcontractor for R. W. Allen Beers Construction (Beers) on a construction project, the Children's Medical Center in Augusta. In May 1996, the parties

---

[11] *Reece v. Chestatee State Bank*, 260 Ga. App. 136, 141-142 (2) (579 SE2d 11) (2003).

entered into a trade contract agreement which provided that ACM would perform the heating, ventilation, air conditioning, and plumbing work for the project. In April 1998, ACM submitted a request for an equitable adjustment (REA) based on increased labor costs incurred as a result of disruptions to its work allegedly caused by Beers. In a letter dated April 29, 1998, Beers responded that ACM's request was precluded by the terms of the trade contract agreement and various change orders and asked ACM to withdraw the request. ACM ultimately filed suit, seeking to recover for the amounts set forth in its REA as well as other damages. Beers moved for summary judgment on ACM's REA and the trial court granted its motion. We find that summary judgment was not appropriate for any of the reasons asserted by Beers and reverse.

In its REA, ACM claimed that it was forced to perform its work in a radically different manner, method, and sequence than that reflected in the project schedules or contemplated by ACM at the time it bid on the project. ACM claimed that the concrete operations on the project were performed late and out of sequence and that reshores were not removed as scheduled. As a result, ACM had only restricted access to work areas and could not rough-in the overhead pipe and equipment using rolling scaffolds and manlifts, as planned. In addition, when the restricted areas became more accessible, ACM's work was constructively accelerated. ACM claimed that Beers required it to work on most floors simultaneously which required ACM to more than double the size of its crews and required the oversized crews to work overtime frequently. Beers also instructed other subcontractors to work on floors where ACM was working, further obstructing ACM's access to ceiling work areas. ACM claimed that Beers allowed other subcontractors to stockpile drywall, curtainwall, and other materials on the floors, further restricting ACM's access to work areas. ACM claimed that Beers's failure to provide ACM access to work areas, active interference with ACM's work, and failure to schedule and manage other subcontractors properly resulted in a significant increase in labor costs. Relying on Article 14 and "other relevant provisions" of the trade contract agreement, ACM sought to recoup those increased costs from Beers.

Beers sought summary judgment on several grounds. Beers argued that (1) ACM had waived its claim by not objecting to Beers's April 29, 1998 letter within 48 hours of receiving it, as required by Article 14 (b) of the trade contract agreement; (2) Articles 3 (b), 10 (b), and 10 (c) of the trade contract agreement barred ACM's claim; and (3) ACM had released any claim it held by signing certain change orders. At oral argument on its motion, Beers also argued that ACM's claim was barred by the "no damages for delay" provision in Schedule C to the Construction Management Agreement between Beers and

the project owner, which was binding on ACM by virtue of certain provisions in the trade contract agreement. The trial court granted Beers's motion, but did not indicate which argument(s) it relied upon in doing so.

1. Pursuant to Article 14 (b) of the trade contract agreement,

> any dispute concerning a question of fact arising under this Agreement which is not resolved shall be decided by [Beers], and [Beers] shall reduce its decision to writing and furnish a copy thereof to [ACM]. The decision of [Beers] shall be final and conclusive, unless within forty-eight (48) hours from the date of receipt of such decision, [ACM] issues written notice to [Beers] contesting same. If [ACM] does not contest [Beers's] final decision within the time period noted above, [ACM] shall be deemed to have waived any right to contest that decision. [ACM] shall carry on the Work and comply with its performance and scheduling obligations under this Agreement despite the existence of any dispute or legal proceedings, unless otherwise agreed in writing by the parties hereto.

Relying on this provision, Beers argued that ACM's failure to object to its April 29, 1998 letter resulted in a waiver of ACM's REA. We disagree.

Article 14 (b) addresses disputes regarding "a question of fact arising under the Agreement." In its April 29, 1998 letter, Beers informed ACM that its REA was precluded by several provisions of the trade contract agreement and by change orders ACM had signed. Beers did not consider the merits of ACM's claim. Thus, the dispute between the parties was not regarding a question of fact arising under the trade contract agreement, but whether ACM was legally entitled to assert the claim included in its REA. Based on the plain language of Article 14 (b), we find that ACM did not waive its claim by failing to respond to Beers's letter.

2. The relevant provisions of Articles 3 (b), 10 (b), and 10 (c) of the trade contract agreement are set forth below.

> Article 3 (b): Time is of the essence of this Trade Contract. In agreeing to complete the Work within the times and sequences herein mentioned, [ACM] represents that it has taken into consideration and made allowances for all hindrances and delays incident to its Work.

> Article 10 (b): [ACM] shall comply with any schedule requirements imposed upon [Beers] in its Agreement with the Owner. [Beers] shall have the right to decide the time,

order and priority which the various portions of [ACM's] Work will be performed and other matters relative to the time and orderly conduct of [ACM's] Work, if, in [Beers's] judgment, such actions are necessary to assure compliance with the scheduling requirements imposed upon [Beers] in its Agreement with the Owner.

Article 10 (c): [ACM] shall at all times supply and promptly pay for adequate tools, appliances, equipment, a sufficient number of properly skilled workmen, and a sufficient amount of materials and supplies of specified quality to efficiently and properly prosecute the Work in accordance with [Beers's] Schedule, and any modifications thereto issued by [Beers], in order to achieve the Project completion date established by [Beers. ACM] shall at all times give due consideration to the fact that other work is dependent upon [ACM's] proper and timely completion of its Work.

ACM argues that Article 3 (b) applies only to hindrances and delays that ACM could have foreseen upon entering the contract. We agree and construe that section as applicable to hindrances or delays contemplated by the parties.[1] ACM submitted evidence that the disruptions and hindrances caused by Beers were far in excess of what could normally be expected when the contract was executed. Beers did not refute that evidence. By its terms, Article 3 (b) does not preclude a claim for increased labor costs based on disruptions or hindrances not contemplated by the parties and does not entitle Beers to summary judgment on ACM's claim.

Moreover, although Article 3 (b) requires ACM to complete its work "within the times and sequences" mentioned in the trade contract agreement despite any "hindrances and delays incident to its [w]ork," it is silent on the issue of ACM's entitlement to additional compensation for substantial unanticipated labor costs caused by Beers's disruption of its work.

Articles 10 (b) and (c) essentially allow Beers to set and alter the time, order, and priority of ACM's work and to require ACM to do whatever is necessary to meet the schedule established by Beers, including employing additional workers and requiring them to work overtime. But those provisions do not address whether ACM is entitled to assert a claim for additional compensation when it incurs substantial unanticipated labor costs in trying to meet the schedule(s) established by Beers and therefore do not authorize summary judgment for Beers.

---

[1] See *Dept. of Transp. v. Arapaho Constr.*, 257 Ga. 269, 270 (357 SE2d 593) (1987).

3. The specific language in the change orders relied upon by Beers in its motion for summary judgment is as follows:

> In accordance with the Subcontract referenced above, the undersigned Subcontractor does solemnly swear, under criminal penalty of a felony for false statements that payment of the lump sum amount of this Change Order constitutes compensation in full for all costs, claims, markup, and expenses, direct or indirect, attributable to this or any prior Change Orders, for any delays encountered by Subcontractor in the performance of the Work through the date of this Change Order, included but not limited to those related to this or any prior Change Order, and for the performance of this and any prior Change Orders by or before the above stated Date of Substantial Completion.

ACM does not dispute that it signed several change orders containing this language. And we agree with Beers that the quoted language appears to bar any claim for delays encountered by ACM in the performance of its work through the date of the change order. But we do not agree that ACM's claim is merely a claim for damages based on delay.

ACM's claim is based on substantial disruption of its work, resulting in loss of efficiency and increased labor costs. The fundamental distinction between the disruption claim and the delay claim is that "[u]nlike the delay claim, the disruption claim is intended not to redress [the subcontractor's] loss from being unable to work, but to compensate [the subcontractor] for the damages it suffered from [the contractor's] actions that made its work more difficult and expensive than [the subcontractor] anticipated and than it should have been."[2] The language in the change orders does not address a disruption claim like that asserted by ACM and thus does not entitle Beers to summary judgment.

4. The "no damages for delay" provision in the contract between Beers and the project owner states that

> [i]n the event of any delay, not the fault of [Beers, Beers] shall be entitled to an extension of time for completion only, and shall not be entitled to any additional payment on account of such delay. Without limiting the foregoing . . . ,

---

[2] *U. S. Indus. v. Blake Constr. Co.*, 671 F2d 539, 546 (D.C. Cir. 1982); see also *Sauer, Inc. v. Danzig*, 224 F3d 1340, 1348 (Fed. Cir. 2000) (a contractor need not establish delay to overall contract completion to succeed on disruption claim; if change or constructive change directly and necessarily caused increased costs, such as loss of efficiency, even in absence of overall delay, those costs are compensable).

[Beers] shall not be entitled to payment or compensation of any kind from the Owner for direct, indirect or impact damages, including but not limited to costs of acceleration arising because of hindrance or delay from any cause whatsoever, whether such hindrances or delays be reasonable or unreasonable, foreseeable or unforeseeable, or avoidable or unavoidable; provided, however, that this provision shall not preclude recovery by [Beers] of damages for hindrances or delays due solely to fraud or bad faith on the part of the Owner or his agents.

The trade contract agreement provides that ACM agrees to be "bound to [Beers] by all of the terms of the Agreement between [Beers] and the Owner (except for the payment provisions)" and that ACM assumes toward Beers the obligations and responsibilities that Beers assumes toward the owner. It further provides that Beers "shall have the benefit of all rights, redress and remedies against [ACM] which the Owner has against [Beers] under its Agreement with [Beers]." Beers maintains that these provisions of the trade contract agreement make the "no damages for delay" provision applicable to ACM and that that provision bars ACM's claim.

Assuming that the "no damages for delay" clause is applicable to ACM and that it, unlike the language in the change orders addressed in Division 3, is broad enough to encompass ACM's claim, it still does not bar ACM's claim because it is inconsistent with a provision of the trade contract agreement. Article 12 (a) of the trade contract agreement provides that

[n]o interruption, interference, inefficiency, suspension or delay in the commencement or progress of the Work for any cause whatsoever, including those for which Owner, Architect or [Beers] may be responsible, in whole or in part, shall relieve [ACM] of its duty to perform hereunder. [ACM] shall be entitled to compensation for such interruptions, interferences, inefficiencies, suspensions or delays, not attributable to [ACM's] fault or neglect, to the extent, but only to the extent, [Beers] actually recovers compensation for same from the Owner.

The trade contract agreement also provides that in the event a provision of the agreement between Beers and the project owner is inconsistent with the provisions of the trade contract agreement, the trade contract agreement controls. Thus, Article 12 (a), which, under certain circumstances, allows ACM compensation for a claim like the one it asserts, would prevail over the "no damages for delay" provi-

sion in the contract between Beers and the project owner. Summary judgment was therefore not appropriate on this ground.

*Judgment reversed. Blackburn, P. J., and Ellington, J., concur.*

ON MOTION FOR RECONSIDERATION.

Beers claims that we overlooked Change Order No. 12, in which ACM agreed to complete certain work on specified floors of the building by specified dates at no additional cost. According to Beers, by signing Change Order No. 12, ACM waived its right to assert a claim for any additional compensation.

We did not specifically address Change Order No. 12 because Beers did not rely on this argument as a basis for its motion for summary judgment. Even if Beers had properly raised the issue below, it has not shown that the work set forth in Change Order No. 12 is the exact same work for which ACM sought compensation in its REA. Thus, summary judgment would not have been proper on this ground.

*Motion for reconsideration denied.*

DECIDED NOVEMBER 24, 2003 —
RECONSIDERATION DENIED DECEMBER 15, 2003 — 

*McKenna, Long & Aldridge, Deborah Ebel, David N. Stern*, for appellant.

*Alston & Bird, John I. Spangler III, Jonathan D. Crumly*, for appellees.